Edwin Bell Cooperage Company *v.* Pittsburgh et al., Appellants.

Argued November 12, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor and *Niles Anderson,* Assistant Solicitor, for school district et al., appellants.

*J. Frank McKenna,* City Solicitor and *Robert Engel,* Assistant City Solicitor, for City of Pittsburgh et al., appellants.

*Harry F. Stambaugh,* with him *J. Randall Thomas,* for appellee.

OPINION BY HIRT, J., March 24, 1955:

The City of Pittsburgh is one of a class of political subdivisions empowered by the Act of June 25, 1947, P. L. 1145 to tax "persons, transactions, occupations, privileges, subjects and personal property" not subject to a State tax. It was on the authority of this Act that the city enacted its mercantile tax ordinances with which we are concerned. The 1947 Act did not except either manufacturers or the products of manufacture. But the Amendatory Act of May 9, 1949, P. L. 898, 53 PS §2015.1 provided that the taxing authority should not have power "to levy, assess and collect a tax on goods and articles manufactured in such political subdivision . . . or on any privilege, act or trans-

action related to the business of manufacturing . . ." The Act of June 20, 1947, P. L. 745, as amended, 24 PS §582.1 et seq., required that every school district of the first class issue mercantile licenses and levy and collect an annual mercantile license tax in accordance with the provisions of the Act.

The plaintiff, Edwin Bell Cooperage Company, operates two plants in the City of Pittsburgh, employing about 100 men. In these plants it produces annually more than two million "slack" barrels, half barrels or kegs, of various sizes which it sells principally to steel or other metal fabricating companies in wholesale lots. The wooden staves and headings, which go into these products are manufactured elsewhere either by a subsidiary company owned by the plaintiff or by independent producers. The steel heads, hoops, rivets, wire bilge hoops, nails and the like which go into the finished product are obtained by the company from various sources.

For each of the years 1948, 1949 and 1950, with which we are concerned, mercantile licenses were issued to the plaintiff by the city and by the school district, as applied for, and in each year the Bell Company made returns to the municipalities of the total sales made by it which it considered taxable. The returns however did not include sales of its cooperage products. In each year the city and the school district assessed the plaintiff for additional mercantile taxes based upon the total sales of its kegs and barrels. The deficiency assessments were made on the theory that plaintiff's business was an assembling operation merely, not "related to the business of manufacturing" and therefore not within the exception of the 1949 amendment, supra. In these appeals the appellants contend that the lower court was wrong in striking down the deficiency assessments. They rely upon *Com-*

*monwealth v. Weiland Packing Co.,* 292 Pa. 447, 141 A. 148; *Rieck-McJunkin Dairy Co. v. Pgh. Sch. Dist.,* 362 Pa. 13, 66 A. 2d 295 and *Armour and Co. v. Pittsburgh,* 363 Pa. 109, 69 A. 2d 405. In our view the holding of these cases to the effect that mere processing operations do not create new products and therefore are not manufacturing within the exception to the authority to tax have no application in the present appeals.

On the contrary, these appeals are ruled by *Com. v. Peerless Paper Specialty, Inc.,* 344 Pa. 283, 25 A. 2d 323, which defined "manufacturing" thus: "In discussing the meaning of the word 'manufacturing', this Court said, in the early case of Norris Brothers v. The Commonwealth, 27 Pa. 494, 496: 'It is making. To *make* in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process.' In elaborating upon this definition, it was said in Commonwealth v. Weiland Packing Co., 292 Pa. 447, 450: '. . . the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges.' We said in Com. v. McCrady-Rodgers Co., 316 Pa. 155, 158, in which an exemption was sustained for appellee on the ground that it was engaged in manufacturing, '. . . a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use: . . . manufacturing is the application of labor or skill to materials whereby the original articles are changed to a new, different and useful article . . .' The basic principle is that

a new product is made out of existing materials: Commonwealth v. Weiland Packing Co., supra, at p. 450; Commonwealth v. Lowry-Rodgers Co., 279 Pa. 361, 365; Norris Brothers v. The Commonwealth, supra, at p. 496."

In the present case the application of skill and labor to the materials going into the construction of a keg or barrel included the following: the staves before use were dried by appellant in kilns for several days to reduce moisture to a definite low content. Wooden headings were also kiln dried when necessary, to bring them back to proper size. Steel hoops received from the steel companies were riveted, expanded, and "flared" on machines built for the purpose of fitting hoops securely to the contour of the keg or barrel. The keg is formed in a "set-up" machine by an employe skilled in the selection of staves of various widths so that the last stave will assure a tight and stable package. Head hoops are put in place by machinery and also steel wire bilge hoops, which must be fitted snugly. A "trussing" machine operation follows, designed to true the package and also to drive the wire hoops to a tight position toward the center of the keg. Staples are cut by machinery from stapling wire. In the final process the keg is inserted manually into a combination nailing and stapling machine and the head is securely nailed and the wire bilge hoops are firmly stapled into position. Separate machinery is required for each of similar processes involved in the making of a barrel. In addition, in producing a barrel, heat is applied to set the staves, and specially designed machines are used in the making of a tongue and groove barrel or half barrel.

The finished keg or barrel is a permanent structure. Its parts are not interchangeable and it cannot be taken apart and reassembled. Thus a new product is made

out of existing materials which in combination are changed into an article with a distinctive character and use. When the tests of the *Peerless Paper Specialty* case, supra, are applied to the present cases, it is clear that the plaintiff company was a manufacturer of kegs and barrels and accordingly the sale of its manufactured products was not subject to the additional assessments in these cases.

Orders affirmed.