369 A.2d 733
**COMMONWEALTH of Pennsylvania,
Appellant,**
v.
**Barbara JONES, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1975.

Decided Feb. 18, 1977.

Charles W. Johns, Assistant District Attorney, Pittsburgh, with him John J. Hickton, District Attorney, Pittsburgh, for appellant.

Larry P. Gaitens, Pittsburgh, for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

SPAETH, Judge:

The Commonwealth appeals from an order granting defendant's motion to suppress evidence seized pursuant to a search warrant. The lower court ordered the evidence suppressed because the police officer who served the warrant failed to verify the inventory of items seized when he made return of the warrant to the issuing authority.

I

Rule 2009(a) of the Pennsylvania Rules of Criminal Procedure provides:

An inventory of items seized shall be made by the law enforcement officer serving a search warrant. The inventory shall be made in the presence of the person from whose possession or premises the property was taken, when feasible, or otherwise in the presence of at least one witness. *The inventory shall be verified by said officer.*

(Emphasis added)

■■ The Rules of Criminal Procedure do not define verification. It is generally recognized, however, that for legal purposes verification means confirmation of the truth of a statement by oath or affirmation.[1] It is evi-

---

1. Black's Law Dictionary defines verification as: "Confirmation of correctness, truth or authenticity by affidavit, oath or deposi-

dent, moreover, that the draftsmen of the inventory form understood verification in this sense. Thus the form, which appears on the reverse side of the warrant, specifically provides that the officer upon return of the warrant to the issuing authority shall swear to the correctness of the inventory before the issuing authority. Here, the officer signed the inventory but not before the issuing authority. Accordingly, the inventory was not verified.

The Commonwealth does not dispute this conclusion. However, it argues that verification is merely an "administrative requirement", and that failure to comply with such a requirement should not result in suppression of the evidence. To this defendant responds that unless the evidence is suppressed, the police may ignore the rule —as it was ignored here—with impunity.

## II

In appraising the parties' respective arguments it is necessary to distinguish between the powers of the Supreme Court and of this court and a trial court.

Under Article 5, Section 10, of the Pennsylvania Constitution the Supreme Court has "general supervisory and administrative authority over all the courts", Section 10(a), including "the power to prescribe general rules governing practice, procedure and the conduct of all courts, * * * and all officers serving process," Section 10(c). In exercising these powers, the Supreme Court may impose requirements beyond the minimum requirements of constitutional law. Thus in *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854 (1974),

tion." See also Rule 1024 of the Pennsylvania Rules of Civil Procedure, which uses verification in this sense:

Every pleading containing averments of facts not appearing of record in the action or containing denials *shall be verified by oath or affirmation* that the averments or denials are true upon the affiant's personal knowledge or information and belief. Pa. R.C.P. 1024(a) (emphasis added).

the Court in forbidding double prosecutions went beyond the limits of the double jeopardy clause of the Fifth Amendment. In explaining this action, the Court collected cases illustrating its power to go beyond the minimum requirements of constitutional law. *Id.* at 624–26 nn. 4–7, 314 A.2d at 855–56 nn. 4–7. Illustrative of these cases is *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A.2d 257 (1965). There the Court exercised its general supervisory power to control the order in which cases should be tried, holding that the Commonwealth could not impeach a defendant on trial for murder by evidence of convictions for burglaries committed subsequent to the murder, where the Commonwealth had tried the burglary cases before the murder case for the purpose of developing evidence of a criminal record that it could then use to impeach the defendant in the trial of the murder case.

In *Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973), the Supreme Court exercised its general supervisory power with respect to the requirements of a valid search warrant. The issue was whether probable cause for the warrant could be proved by oral testimony. Mr. Justice POMEROY and Mr. Justice MANDERINO were of the opinion that as a matter of constitutional law, probable cause had to appear in a written affidavit sworn to by the officer before the issuing authority. The majority of the Court disagreed with this opinion, but announced, in an exercise of the Court's general supervisory power, that it would go beyond minimum constitutional requirements and provide by amendment of the Rules of Criminal Procedure that probable cause must thereafter appear in the written affidavit. Following the effective date of such an amendment, the Court said, a search conducted pursuant to a warrant not supported by a sufficient written affidavit would be held invalid. *Id.* at 315 n. 3, 300 A.2d at 81 n. 3.

From these decisions it is arguable that the Supreme Court might hold that the evidence in the present case

was properly suppressed; the Court might reason that unless it exercised its general supervisory power to impose such a sanction, the requirement of Rule 2009(a) that the inventory be verified would become meaningless.

■ We do not suggest that the Supreme Court would so hold; it might, for example, decide upon some less severe sanction, or conclude that Rule 2009 should be amended. The point is that it would be within the Supreme Court's power to take such action as ordering the evidence suppressed.

Such an order, however, is not within our power, and was not within the power of the lower court. This is so because, unlike the Supreme Court, neither this court nor the lower court has any general supervisory or rule making power on the basis of which an order directing the suppression of evidence may be entered. If such an order is to be entered, some other source of power must be found.

■ In some instances this court or a trial court may find the power to order the suppression of evidence by reference to a rule of court. For example, on the civil side a party who has disobeyed a discovery order may be "prohibit[ed] . . . from introducing in evidence designated documents, things or testimony, or from introducing evidence of physical or mental condition." Pa.R.C.P. 4019(c)(2). On the criminal side the general rule is that the accused has no right to discovery of evidence in the possession of the Commonwealth except where compelling circumstances exist. Pa.R.Crim.P. 310.[2] *Commonwealth v. Bederka*, 459 Pa. 653, 331 A.2d

---

2. Pa.R.Crim.P. 310 provides in part:

All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court *may* order the attorney for the Commonwealth to permit the defendant or his attorney . . . to inspect and copy . . . any written confessions and written statements made by the defendant. *No other discovery or inspection shall be ordered except upon proof by the defendant,*

181 (1975); *Commonwealth v. Senk*, 412 Pa. 184, 194 A.2d 221 (1963); *Commonwealth v. Caplan*, 411 Pa. 563, 192 A.2d 894 (1963). However, the Commonwealth's failure to endorse on the indictment the name of a witness examined before the grand jury may result in an order dismissing the indictment. Pa.R.Crim.P. 216; *Commonwealth v. Phillips*, 208 Pa.Super. 121, 220 A.2d 345 (1966), *aff'd per curiam on the basis of the opinion below*, 424 Pa. 641, 226 A.2d 863 (1967); *Commonwealth v. Emmel*, 194 Pa.Super. 441, 168 A.2d 609 (1961); *Commonwealth v. Brownmiller*, 137 Pa.Super. 261, 9 A. 2d 155 (1939). A comparable order may be entered if the Commonwealth offers evidence inconsistent with its bill of particulars. Pa.R.Crim.P. 221(c); *Commonwealth v. Albanesi*, 234 Pa.Super. 111, 338 A.2d 610 (1975). In *Albanesi* the court ordered the indictment dismissed, but the broad discretionary authority granted to the court by Rule 221(c) would have allowed the court to order evidence suppressed. Subsection (c) provides:

> When an application for relief is made [by the defendant], the court may make such orders as it deems necessary in the interests of justice.

In *Commonwealth v. Jackson*, 457 Pa. 79, 319 A.2d 161 (1974), the Court was confronted with fashioning a remedy for a defendant who had before trial notified the Commonwealth of the names and addresses of the witnesses he intended to call to establish an alibi but whose request for the names and addresses of the witnesses the Commonwealth intended to call to refute his alibi had been denied.[3]

*after hearing of exceptional circumstances and compelling reasons. . . . In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth.* (Emphasis added)

3. At the time, Pa.R.Crim.P. 312 required the defendant to give the Commonwealth notice of his intention to claim an alibi along with the details of the alibi and the identification of the witnesses who would substantiate the alibi. On June 29, 1973, the Supreme Court suspended the rule. A new rule has not been promulgated.

The Court stated:

> Because appellant was not granted reciprocal discovery, even after his express request, the enforcement of rule 312 violated appellant's right to due process. It was constitutional error to require appellant to supply the names of his alibi witnesses, without directing the Commonwealth to afford appellant reciprocal discovery rights.

*Id.* at 83, 319 A.2d at 163.

The Court awarded appellant a new trial but pointed out that other remedies had been available to the trial court:

> It could have directed the Commonwealth, at some ample time prior to trial, to give appellant the names and addresses of all witnesses it would call to refute appellant's alibi. . . . Or, if the Commonwealth did not provide appellant with the names of the witnesses who would be called to refute his alibi, the trial court could have precluded the Commonwealth from introducing their testimony. . . .

*Id.* at 83, n. 7, 319 A.2d at 163, n. 7.

 This court or a trial court may also order the suppression of evidence obtained in violation of a defendant's constitutional rights. The power to enter such an order derives from the duty to ensure that no person accused of crime is denied his constitutional rights. Thus in *Mapp v. Ohio*, 367 U.S. 643, 648, 81 S.Ct. 1684, 1687, 6 L.Ed.2d 1081 (1961), the Court quoting from *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914), said:

> "If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment . . . is of no value . . . ."

And in *McNabb v. United States*, 318 U.S. 332, 339, 63 S.Ct. 608, 612, 87 L.Ed. 819 (1943), the Court said:

> And this Court has, on Constitutional grounds, set aside convictions, both in federal and state courts,

which were based upon confessions "secured by protracted and repeated questioning of ignorant and untutored persons, in whose minds the power of officers was greatly magnified", . . .

As examples of the exercise of this power to order the suppression of evidence unconstitutionally obtained, *see Commonwealth v. Kline,* 234 Pa.Super. 12, 335 A.2d 361 (1975); *Commonwealth v. Williams,* 229 Pa.Super. 390, 323 A.2d 862 (1974); *Commonwealth v. Williams,* 224 Pa.Super. 464, 307 A.2d 288 (1973); *Commonwealth v. Abbruzzese,* 223 Pa.Super. 452, 302 A.2d 853 (1973); and *Commonwealth v. Burgos,* 223 Pa.Super. 325, 299 A.2d 34 (1972).

## III

In the present case, defendant has not cited any authority enabling either the lower court or this court to order the suppression of evidence simply because the inventory prepared incident to seizure of the evidence was not verified. There is no rule conferring such authority. Neither does it appear that there has been any violation of defendant's constitutional rights; defendant does not contend that the search warrant in question was obtained without probable cause, or that it was improperly executed. In these circumstances, we find ourselves unable to uphold the lower court's order suppressing the evidence.

We are quite aware that to a degree this conclusion may appear unsatisfactory; if the lower court initially, and then this court on appeal, may not order the suppression of evidence for failure to verify the inventory, one may perhaps anticipate that the requirement of Rule 2009(a) that the inventory be verified will be generally ignored. In response to this anticipation, however, several observations may be made.

The first observation is that to some extent at least Rule 2009(a) is self-enforcing. The careful police officer will recognize that by verifying the inventory he will gain protection against possible subsequent claims that

he lost or misappropriated some of the items seized. It appears, in fact, that the draftsmen of the rule intended this result, for their comment states, in part:

> The inventory is required to assure that all items seized are accounted for in the return to the issuing authority.

From this it follows that the careful police commissioner will insist, if necessary by appropriate disciplinary procedures, that any officer executing a search warrant does verify the inventory.

The second observation is that failure to verify the inventory may have evidentiary consequences. Suppose, for example, that a defendant testifies in support of his motion to suppress that an item on the inventory was in fact not seized but "planted" by the officer serving the warrant. Upon the officer's contrary testimony, an issue of credibility will be presented. In resolving that issue, the hearing judge may find the officer's failure to verify the inventory important.

The final observation returns the discussion to where it began. As an intermediate appellate court of limited jurisdiction, we can only do so much. If more is to be done, it must be by the Supreme Court pursuant to its general supervisory and rule making powers, either upon allowance of an appeal in this case, or by amendment of the rules, or both. We only add that one should not be discouraged by this conclusion; one may have some confidence that the Supreme Court did not promulgate rules in the expectation that they could be violated with impunity.

The order of the lower court suppressing the evidence is reversed.

JACOBS, J., did not participate in the consideration or decision of this case.

PRICE and VAN der VOORT, JJ., concur in the result.