## Remmey v. Centennial School District

*Irving T. Cooper*, for plaintiff.
*John Philip Diefenderfer*, for defendant.

BORTNER, *J.*, March 26, 1982—Donald B. Remmey, Inc. (Remmey) brought this action pursuant to 72 P.S. 5566(c)[1] to recover tax monies paid to Centennial School District (Centennial). The case was heard by this court without a jury whereupon findings of fact, conclusions of law and a decision in favor of plaintiff were entered. Defendant filed timely exceptions which, after a hearing by the court en banc, were denied and a final judgment entered in favor of plaintiff. Centennial has appealed and we enter the following opinion.

On May 25, 1976, Centennial adopted a Business Privilege Tax Resolution. Remmey received a copy of the resolution plus an "information sheet" describing the businesses subject to the tax. Neither

---

1. Act of June 21, 1957, P.L. 381, §2

the resolution itself nor the information sheet indicated that manufacturers are exempt from the tax pursuant to the Local Tax Enabling Act of 1965.[2]

Plaintiff paid the tax in accordance with the resolution for three fiscal years as follows:

| Tax Year | Estimated | Final | Total Tax Paid |
|----------|-----------|-------|----------------|
| 1976-77 | $3,072.62 | $360.36 | $3,432.98 |
| 1977-78 | 3,432.98 | 531.15 | 3,964.13 |
| 1978-79 | 3,973.69 | | 3,964.13 |
| | TOTAL AMOUNT PAID . . . . . . . $11.379.80 | | |

Upon discovering that manufacturers are exempt from the tax, plaintiff's General Manager, James M. McMonagle, wrote Centennial a letter dated July 18, 1979, requesting a refund. This request was denied by return letter dated August 17, 1979. Accordingly, this action was brought in assumpsit pursuant to 72 P.S. §5566(c).

The initial question in this case is whether plaintiff is engaged in manufacturing and is therefore exempt from local taxation pursuant to §6902(4) of the Local Tax Enabling Act. That section provides in relevant part:

"Such local authorities shall not have authority by virtue of this act:

(4) To levy, assess and collect a tax . . . or any privilege, act or transaction related to the business of manufacturing . . . ".

Unfortunately, the term "manufacturing" is not defined in the act. Consequently, in addressing this term the courts have fashioned a judicial definition. The Pennsylvania Supreme Court summarized this effort in Golden Triangle Broadcasting, Inc. v. City of Pittsburgh, 483 Pa. 525, 528-29, 397 A. 2d 1147,

---

2. Act of December 31, 1965, P.L. 1257, §2, 53 P.S. §6902(4).

1148-49 (1979), quoting Com. v. Deitch Co., 449 Pa. 88, 93-94, 295 A. 2d 834, 837 (1972), as follows:

"The meaning of "manufacturing" has been restated by this Court in Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361, 364, 167 A. 2d 257, 258-59 (1961):

" 'Manufacturing' as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Com. v. Weiland Packing Company, 292 Pa. 447, 449, 141 A. 148 (1928); Pittsburg v. Electric Welding Company, 394 Pa. 60, 145 A. 2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A. 2d 572 (1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or a new product: Com. v. Weiland, supra; Pittsburgh Electric Welding Co., supra." ' "

In the instant case, the taxpayer is engaged in the making of wooden pallets for industrial use. A pallet, as constructed by plaintiff is a portable wooden platform designed to be lifted and moved by a forklift and is used for the storage and movement of goods or materials. In plaintiff's business an on-site computer is used to design each pallet in accordance with the specifications of the customer. Raw lumber is purchased and then cut to size. The edges may be chamfered and notches cut depending on the customer's requirements. Specialized machinery used

only in the pallet industry is employed to shape and cut each piece of lumber. Finally, the processed lumber is nailed or stapled into its proper alignment by a machine using specialized nails that seat in the wood so that the pallet may not be pulled apart without splintering the wood.

Plaintiff's operation is more than that of mere assembler. An assembly process makes a new product by simply putting together finished parts in their proper order. Thus, it has been held that the construction of a watch from its constituent parts is not manufacturing but assembling: Com. v. Percival, 11 Pa. Super. 608 (1889). In the instant case, however, each piece of lumber must be cut and shaped by Remmey to particular specifications determined by the needs of the customer. Hence, skill and labor are applied: Edwin Bell Cooperage Co. v. Pittsburgh, et al., 177 Pa. Super. 567, 112 A. 2d 662 (1955).

Similarly, plaintiff's business is distinct from that of a processor. A processor merely changes the shape or form of a raw material in a superficial way. Thus, the compacting of scrap iron is not manufacturing: Morrisville Scrap Processing Co., Inc. Tax Appeal, 6 Pa. Commw. 121, (1972) aff'd 453 Pa. 610, 307 A. 2d 905 (1973). Nor is the kiln drying of lumber manufacturing: Com. v. Babcock Lumber Company, 1 Pa. Commw. 45, 272 A. 2d 522 (1971). In each of these operations, essentially the same material that went into the process emerged at the other end. It cannot be said that a new product was created.

In the instant case, however, we must conclude that a new, different and useful product has been made by the application of skill and labor to raw lumber: Com. v. Perfect Photo, Inc., 29 Commw. 316, 371 A. 2d 580 (1977). As in the making of

wooden barrels, "a new product is made out of existing materials which in combination are changed into an article with a distinctive character and use." Edwin Bell Cooperage Co. v. Pittsburgh, et al., 177 Pa. Super. at 570-571, 112 A. 2d at 664 (1955). Plaintiff's operation begins with raw lumber and shapes, cuts and combines it in such a way as to create a new and distinctive product, namely a pallet, that is capable of holding a specified size, weight and type of material and be lifted and moved by a forklift.

Having established that plaintiff is engaged in manufacturing, we must now address the question of whether Remmey has complied with the procedural requirements of §5566(b) and (c). These sections establish a framework whereby an aggrieved taxpayer is first required to file for a refund with the local taxing authority pursuant to §5566(b). If the taxing authority refuses to grant the refund, then the taxpayer may bring a suit in assumpsit under §5566(c).

Section 5566(b) provides in part that:

"The right to refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review appeal, refund or otherwise, for recovery of moneys paid as aforesaid . . . ".

Centennial argues that Remmey may not recover under the act because a separate refund procedure is provided by Centennial's Business Privilege Tax Resolution. That taxing resolution establishes a two stage payment scheme whereby the taxpayer is required to first file an estimated tax based on his gross business receipts for the previous tax year. At the end of the tax year the taxpayer files a final

return. At this time, the taxpayer is to "state the amount of the gross volume of business as estimated in the first return, the amount of tax paid thereon and the amount of tax or refund due, if any, upon the final computation." Business Privilege Tax Resolution §6.

It is apparent that this "refund procedure" is merely intended to be a mechanism for adjusting the taxpayer's estimated tax so that it comports with the taxes due on the volume of business actually conducted that year. It was not meant as a refund procedure for taxpayers who, as in the instant case, claim that they are exempt from the taxing resolutions and do not owe any tax regardless of the volume of business done. Therefore, Centennial's "refund procedure" is distinguishable from the review procedure established by the taxing authority in Tenox Corporation v. Tax Review Board, 24 D. & C. 2d 426 (1961) and plaintiff's present claim is not barred.

The next issue raised by defendant is whether plaintiff filed a "written and verified claim" for a refund pursuant to §5566(b). It is clear that under the act Remmey may not bring suit in assumpsit unless it has first made a "written and verified claim" for a refund with the local taxing authority: Bridesburg Corp. v. Township of Whitehall, 32 Lehigh L.J. 464 (1967). In the instant case the General Manager of Remmey, James M. McMonagle, sent Centennial a letter dated July 18, 1979. In that letter he outlined to defendant that Remmey had recently discovered that as manufacturers they were exempt from the Business Privilege Tax, that they had been erroneously paying this tax since its enactment, and that they "herewith request a refund of these monies."

Defendant argues that plaintiff's claim was insufficient because it was not verified. The word

"verified" is not defined by the statute. As a general rule, however, it is recognized that, for legal purposes, where the word is not otherwise defined, it means the "confirmation of the truth of a statement by oath or affirmation." Com. v. Jones, 245 Pa. Super. 487, 369 A. 2d 733 (1977). Accord, Black's Law Dictionary 1723-33 (4th Ed. 1968). Thus, strictly interpreted, it would appear that plaintiff has failed to verify his claim.

We do not find, however, that a merely technical error of this sort precludes plaintiff from recovering in a suit in assumpsit. See Com. v. Jones, supra. The mere fact that plaintiff has not attested to the accuracy of his claim by oath or affixed an affidavit has not impaired the purpose of the act or prejudiced defendant in any way. The taxing authority has been appraised of plaintiff's claim. It is difficult to see what difference it would make if plaintiff had a notary seal or an affidavit affixed to its letter. Consequently, we are satisfied that the signed letter sent by Remmey's General Manager is sufficient to satisfy the requirement of § 5566(b) that a "written and verified" claim be made.

Section 5566(b) also requires that the claim be made "within two years of payment thereof." Thus, the taxpayer may not bring a suit in assumpsit for those taxes paid more than two years prior to the written claim: May Department Stores v. City of Pittsburgh, et al., 31 Commw. 398, 376 A. 2d 309 (1977). In the instant case, plaintiff filed its claim for a refund on July 18, 1979. Therefore, plaintiff may bring suit for taxes paid on or after July 18, 1977.

There is no doubt that plaintiff's claim for a refund was filed timely with respect to taxes paid in tax years 1978-79 and 1977-78. The difficulty arises, however, with reference to the 1976-77 tax year. In that year, the final tax was due on or before August

15, 1977. Obviously, this date is within the two year limitation period. Plaintiff paid its 1976-77 estimated tax, however, prior to July 18, 1977. Since the estimated tax is subject to modification either up or down at the end of the tax year, we find that the tax is not paid for purposes of § 5566(b) until the final return is filed.

For the foregoing reasons, defendant's exceptions were denied and dismissed and an order was entered granting final judgment to plaintiff in the sum of $11,379.80 plus interest from August 15, 1979.

## ORDER

And now, March 26, 1982, after argument upon exceptions filed by the Centennial School District to the adjudication of this court and after consideration of the memoranda of the parties, the said exceptions are hereby denied and dismissed and the prothonotary is directed to enter a final judgment upon the verdict of this court in favor of plaintiffs, Donald B. Remmey, Inc., t/a Remmey Wood Products in the sum of $11,379.80 together with interest from August 15, 1979.