482 A.2d 1277

**COMMONWEALTH of Pennsylvania**

v.

**Gordon L. GRAHAM, Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1984.

Filed Sept. 28, 1984.

Petition for Allowance of Appeal Denied Feb. 25, 1985.

172

Russell J. Heiple, Johnstown, for appellant.

Dennis M. McGlynn, Assistant District Attorney, Ebensburg, for Commonwealth, appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This case involves two appeals. The first is from the judgments of sentence for possession with intent to deliver marijuana (2½ to 5 years), possession of LSD (6 months to 1 year), possession of a prohibited offensive weapon (2 to 5 years), receiving stolen property (2 to 5 years) and two (2) counts of making false reports to law enforcement officials (6 months to 1 year for each count). All sentences were ordered to be served consecutively. The second appeal is from the order holding that the $30,717 seized from the appellant's, Gordon Graham's, residence was "derivative contraband", and, thus, was "to be deposited into the general treasury of Cambria County" after final disposition of the case on appeal. We affirm.

The facts, viewed in a light most favorable to the verdict-winner, consist of the following: On January 21, 1982, Pennsylvania State Trooper William A. Cipollini was introduced to "an interested citizen" by the District Attorney of Cambria County. An interview ensued in which the citizen-informant told the trooper that:

> ... one Gordon L. Graham, white male, approximately 28, who lived at 617 Powell, Cresson, Pennsylvania, in Cambria County was dealing in narcotics and controlled substances out of his residence. (N.T. 4/28/82 at 5)

After the informant had told the trooper that he had purchased marijuana from the appellant "a couple of weeks" prior to the 21st of January, 1982, he agreed to participate in a "controlled" buy from the appellant. This occurred on January 26th and was preceded by the informant being strip-searched to minimize the possibility that he might already be in possession of drugs. The trooper then

drove the informant to the appellant's residence and provided him with $20 to make whatever purchase he could with the money.

The informant was observed by the trooper entering the appellant's residence and exiting within 5 minutes in possession of a plastic sandwich bag containing a vegetable matter. The substance was tested, found to be marijuana and was the basis for a warrant to search the appellant's residence. Application for the warrant was made by Trooper Cipollini on the 27th of January, 1982, and was executed the following day at 6:30 a.m.

A 6-man search team, headed by Trooper Cipollini, announced their identity and purpose prior to gaining entry into the Graham residence. Thereafter, the police read the warrant to the appellant and his wife before advising them of their *Miranda* rights and commencing a search.

Trooper Cipollini found a brown paper bag in the dining room containing 2 plastic bags, each held approximately 1 pound of marijuana. Following this, the trooper positioned himself at the kitchen table and catalogued the items seized by other members of the search team. For example, 10 plastic bags containing 1 pound of marijuana each were found inside a garbage bag situated near the entrance way. From appellant's second floor bedroom 11 one pound bags of marijuana, which, when added with the other marijuana found on the premises, added up to approximately 26 pounds. In the same room, the police discovered $33,162.88 in cash, $30,717.00 of which was in a brown vinyl bag next to appellant's bed; 2,288 tablets of LSD in some dresser drawers; a .44 magnum Winchester rifle; a .12 gauge Smith and Wesson shotgun; a .12 gauge Fox double-barrel shotgun; and a Mettler electronic scale.

On the first floor, the police seized a sword-cane with a blade measuring 23½ inches.

The inventory of the items was begun by Trooper Cipollini, but, because there was concern over appellant being arraigned within the time (6 hours) prescribed by law, the

job was completed by Troopers Cunningham and Bellone while Trooper Cipollini drove the appellant to the State Police barracks in Greensburg for processing. Thereafter, Troopers Cunningham and Bellone transported the seized items to the barracks, and, along with Trooper Cipollini, reviewed the 3-page receipt/inventory. However, only Troopers Cipollini and Cunningham affixed their signatures to the document.

After the denial of appellant's omnibus pre-trial motion, the case proceeded to trial and the facts just recounted were presented to the jury, along with the testimony of Chief of Police for Gallitzin Borough (Joseph S. Fox) to substantiate the false report charges.

In particular, Chief Fox recalled that on November 8, 1980, appellant's sister reported that her brother's trailer had been burglarized. Two weeks thereafter, the appellant supplied the Gallitzin police with the serial numbers of some of the firearms allegedly stolen, two of which were the .12 gauge double-barrel Fox shotgun and the .44 magnum Winchester rifle found by the troopers in their search of appellant's residence on January 28, 1982.

On May 24, 1981, the appellant reported a second burglary. One of the items purportedly stolen was the .12 gauge Smith and Wesson shotgun seized by the troopers in the January 28th search.

In defense, the appellant testified that the drugs seized by the police were for personal use, the money found was accumulated through frugality, the items allegedly stolen were either replaced with similar weapons or simply not reported to the police upon recovery and the scale was purchased from an anonymous person in a bar for $150— the Mettler scale recovered from appellant's home was identified as stolen from L. Robert Kimball & Associates by its soils technician, who used it and ordered its replacement, and valued the stolen one at $1,000–$1,500 as of January, 1982.

The jury, hearing and weighing all of the evidence, entered a verdict of guilty on all charges. Appellant was sentenced and a timely appeal was filed therefrom. Shortly thereafter, the notice of appeal initially filed was amended to include an appeal from the order of court finding, after a hearing, some of the seized money "derivative contraband" subject to confiscation by the Commonwealth.

On appeal, the appellant has preserved five issues for our review. The first two concern the lower court's alleged error in failing to suppress the evidence seized because the police disregarded Pa.R.Crim.P. 2005(d) and 2009(a).

In particular, as to the Rule 2005(d) claim, the appellant directs us to the back of the search warrant application, which reads in relevant part:

> * ☒ This Warrant should be served as soon as practicable but in no event later than 3:00 ☐ A.M. ☒ P.M. January 29, 1982 and shall be served only during daytime hours of 6 A.M. to 10 P.M.
>
> Issued under my hand this 27 day of January, 1982 at 3:30 A.M. o'clock (issue time must be stated)
>
> (SEAL) /s/ KENNETH ROBINE
>          (Signature of Issuing Authority)
>
> ---
>            \* \* \*
>   \* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 2005(d).

The appellant would have us find that the time period typed in by the District Justice "violated the two (2) day restriction of Pa.R.Crim.P. 2005(d)" and rendered the warrant "void when issued, regardless of when it was actually served." To hold that the entry was a typographical error, the appellant argues, the lower court should have required some testimony from the issuing authority. Only then, appellant continues, could the lower court have been able to make such a finding of fact. We do not agree.

Subsection (d) of Rule 2005, which is specifically referred to by the appellant in his averment to this Court, "direct[s] that the search be *executed* within a specified period of time, not to exceed two (2) days from the time of issuance."

(Emphasis added)   A review of the facts discloses that there has been no violation of this provision of Rule 2005.

At the suppression hearing, the affiant/Trooper Cipollini reconstructed the circumstances surrounding the securement of the warrant "at approximately 3:30 in the afternoon" on the 27th of January, 1982, as compared to the ante meridian time of 3:30 typed in by the District Justice.   The lower court's own questioning of the affiant confirmed this point.

Further, the affiant testified that the warrant was *executed* on the 28th of January, 1982, at approximately 6:30 a.m., a fact substantiated by appellant's wife, Denise, who recalled the police arriving in the early morning hours (5:45 a.m.) of January 28th to serve the warrant.

■  Consequently, it being the sole function of the court hearing the evidence to rule on questions of credibility, we conclude that there is ample support in the record to substantiate the factual finding by the suppression court that the time affixed on the search warrant, *reflecting when it was issued*, was a typographical error not tantamount to a willful or deliberate act necessitating a suppression of evidence seized as a result thereof.   *Compare Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) and *Commonwealth v. Iannaccio*, 304 Pa.Super. 307, 450 A.2d 694 (1982), aff'd 505 Pa. 414, 480 A.2d 966 (1984) (Zappala, J., Opinion in Support of Affirmance, joined in by McDermott and Hutchinson, JJ.).

■  Moreover, we wish to note that the actions of the police, having occurred well within the time required by Rule 2005(d), conforms with the intent of the Rule and its admonition that "an unreasonable delay between the issuance and service of a warrant jeopardizes its validity." *Comment* to Rule 2005, citing *Commonwealth v. McCants*, 450 Pa. 245, 299 A.2d 283 (1973).   Further, we have no reason to hold other than that the police were acting in "good faith" in executing a warrant which was technically *errata*.   *See Massachusetts v. Sheppard*, —— U.S. ——, 104

S.Ct. 3424, 82 L.Ed.2d 737 (1984) (Affiant/officer acted in "good faith" in executing a warrant which was a form warrant for drugs to search for evidence in a murder; error of judge in failing to correct clerical mistake did not subject evidence seized to "exclusionary rule.") and *compare Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984) (Search warrant was defective where District Magistrate, who took policeman's oath to the affidavit of probable cause, failed to sign the order issuing the warrant. Such a technicality cannot be ignored and the District Magistrate's jurat on policeman's affidavit of probable cause was no substitute).

█ Also, to upset the ruling of the suppression court because of the absence of the issuing authority's testimony is unwarranted under the facts here. First of all, and most importantly, the affiant was present and testified as to the circumstances prompting the issuance of the warrant and the time frame within which this all took place. Thus, although Pa.R.Crim.P. 2003 precludes evaluation of evidence outside the warrant affidavits on the issue of probable cause, this constraint does not extend to other aspects of the warrant. *Commonwealth v. Swint*, 256 Pa.Super. 169, 389 A.2d 654 (1978). This Rule did not compel the suppression court nor does it require this Court to ignore Trooper Cipollini's testimony that the warrant was secured at 3:30 p.m. on the 27th of January, 1982. *Id.*

The Commonwealth proved its case at the suppression by a preponderance of the evidence. If the issuing authority was so crucial to the case, as the appellant would have us believe, he could have been subpoenaed very easily by the accused. *Cf.* Pa.R.Crim.P. 144. Having failed to do so, appellant will not be heard to complain now.

█ As for appellant's complaint that the failure of the person or persons responsible for cataloguing *all* of the items appearing in the inventory to sign it rendered it "unreliable", contra to Pa.R.Crim.P. 2009(a) and subject to suppression, we take issue.

In *Commonwealth v. Jones*, 245 Pa.Super. 487, 369 A.2d 733 (1977), this Court was confronted with an appeal from the trial court's suppression of evidence seized pursuant to a warrant signed by the officer who served it, but not verified (i.e., confirmed by oath or affirmation) by him before the issuing magistrate as required by the then applicable version of Rule 2009(a). We reversed the court below on the grounds that:

> In the present case, defendant has not cited any authority enabling either the lower court or this court to order the suppression of evidence simply because the inventory prepared incident to seizure of the evidence was not verified. There is no rule conferring such authority. Neither does it appear that there has been any violation of defendant's constitutional rights; defendant does not contend that the search warrant in question was obtained without probable cause, or that it was improperly executed. In these circumstances, we find ourselves unable to uphold the lower court's order suppressing the evidence.

*Id.*, 245 Pa.Superior Ct. at 496, 369 A.2d at 737.

The current version of the Rule has eliminated altogether the need for an inventory to "be sworn to before the issuing authority." *See* 1984 *Comment* to Pa.R.Crim.P. 2009(a). It now only requires that:

> ... The officer shall sign a statement on the inventory that it is a true and correct listing of all items seized, and that the signer is subject to the penalties and provisions of 18 Pa.C.S. § 4904(b)—Unsworn Falsification to Authorities.

Instantly, the signature of "William A. Cipollini", as the name of the person issuing the receipt/inventory, appears at the bottom of each page of the three-page document and is preceded by the language:

> I/we *William A. Cipollini* of *Penna State Police* do swear (or affirm) that the property seized and taken pursuant to and under the authority of the above numbered Warrant is to the best of my/our knowledge and

belief correctly and completely listed above as a just, true and complete Receipt/Inventory.

Below Cipollini's signature appears that of "Tpr Thomas D. Cunningham" as a witness to verify the accuracy of the inventory. Although the pre-printed form failed to contain the verbiage "that the signer is subject to the penalties and provisions of 18 Pa.C.S. § 4904(b)", given this Court's inability to suppress evidence for a violation of a Rule of Procedure promulgated by our Supreme Court, *see Commonwealth v. Jones, supra*, we will uphold the ruling of the court below on this matter.

We observe that if our high Court would have wished to impose the harsh sanction of suppressing evidence where Rule 2009(a) was not complied with in all respects, it could have done so very easily by setting forth such a remedy in the Rule itself (*see* Pa.R.Crim.P. 1100(f)), especially following our decision in *Commonwealth v. Jones, supra*. Nonetheless, it refused to do so and merely called for the officer serving the warrant to sign the inventory.

Since the purpose of preparing an inventory is "to assure that all items seized are accounted for in the return to the issuing authority" (*see Comment* to Rule 2009), we find that this objective was satisfied here when all of the evidence obtained was brought to the State Police barracks and checked by Troopers Cipollini, Bellone and Cunningham against the inventory prepared by the first two troopers. The absence of Bellone's signature from the inventory, or the fact that Cipollini did not personally enter all of the items listed on the document, we believe is not fatal to the validity of the inventory necessitating the suppression of the evidence. *See Commonwealth v. Jones, supra.*

▰ The third issue raised by the appellant's counsel concerns the claimed error by the lower court in refusing to grant a continuance on the part of counsel "upon realizing that defendant was under the influence of controlled substances." (Appellant's Brief at 10)

During the assistant district attorney's cross-examination of the appellant he asked if the appellant had any marijuana or LSD the day of trial and the appellant stated:

A  Marijuana.  No LSD.

Q  You had marijuana before you testified today?

A  Did you have a cigarette today?

Q  No, I didn't sir, I don't smoke.  Did you have any marijuana?

A  Yes, I did.

(Vol. II, N.T. 5/7/82 at 183)

A sidebar was sought by the assistant district attorney, during which concern was voiced over appellant's awareness of what he was saying.  Accordingly, the trial court embarked on an incisive inquiry (see Vol. II, N.T. 5/7/82 at 187–188) to ascertain what impact, if any, the ingestion of marijuana within 24 hours of trial had on appellant's ability "to know what he was saying [or going to say] and to have voluntarily intended to say it." See Commonwealth v. Culberson, 467 Pa. 424, 428, 358 A.2d 416, 417 (1976) (Intoxication affecting the voluntariness of a confession).

The trial court ruled that, based upon its observations of the appellant during the day's proceedings and the responses given by him on direct examination, as well as his answers to the assistant district attorney's questions regarding the use of marijuana, the need did not exist to grant a continuance to allow the appellant's system to purge itself of the drug.  Also, the responses elicited from the appellant convinced the trial court that the appellant was acting voluntarily and not under any delusions engendered by the consumption of marijuana; viz.:

THE COURT: Well, I have to place on the record the fact that in observing him prior to this particular question and his testimony now, that he may have ingested marijuana, but it has had no effect as to destroying the effectiveness of his testimony.  One, he understands the questions that

are put to him. And, two, he is capable of formulating answers.

(Vol. II, N.T. 5/7/83 at 190–191)

We are in complete accord with the manner in which the trial court handled the situation, and find no reason to alter its ruling, which is supported by the facts at bar and the law on the subject. *See, e.g., Commonwealth v. Kuhn,* 327 Pa.Super. 72, 475 A.2d 103 (1984).

Appellant's fourth protestation centers upon the harshness and excessiveness of the sentence imposed.

■ We have reviewed the sentencing transcript and the terms of imprisonment imposed in light of the applicable statutory and case law on the subject, *see, e.g., Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977); *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976); 42 Pa.C.S.A. § 9701 *et seq.,* and find that there has been no abuse of discretion on the part of the court below in entering the sentence it did against the appellant. *See Commonwealth v. Gillespie,* 290 Pa.Super. 336, 434 A.2d 781 (1981).

The sentencing court looked at the nature of the offenses, the character of the appellant and the particular circumstances impacting upon the appellant's life, as evidenced by the 9-page pre-sentence report, in imposing the sentences so as to run consecutively. This neither "shocks our conscience" nor do we find that it exceeds the permissible boundaries of the law.

Finally, we come to the last of appellant's issues, i.e., "did the lower court err in confiscating $30,717.00 in cash seized upon defendant's arrest?" (Appellant's Brief at 15)

■ In making its determination, the lower court was required to find that "the property sought to be returned was 'directly derived from' or 'directly traceable to' the sale of a contraband substance...." *Commonwealth v. Myers,* 298 Pa.Super. 272, 280, 444 A.2d 1170, 1174–1175 (1982).

The evidence relied upon for making this determination consisted of the suppression and trial records.

██ It will be recalled that the Commonwealth set up a "controlled" purchase of drugs from the appellant's residence on January 27, 1982, through a confidential informant. The informant was provided with $20 to make the purchase, was observed entering the appellant's residence and returning within a matter of minutes to the police vehicle minus the $20, but in possession of a ½ ounce of marijuana sold to him by the accused. Following the securement of a warrant, the police searched the appellant's residence and seized, *inter alia*, drugs (approximately 26 one pound ziploc plastic bags containing marijuana and 2,288 tablets of LSD), drug paraphernalia (3 scales) and $30,717 in cash from a plastic garbage bag situated next to appellant's bed.

We agree with the court below that, albeit "none of the marked money [$20] was recovered ..., there is more than a preponderance of evidence supporting the contention that the $30,717 was *traceable* to drug sales." (Emphasis added) (Lower Court Opinion at 3) For example, "[t]he marijuana seized was carefully weighed and wrapped in one-pound bags, ready to be sold. The money was thrown in the [brown vinyl plastic] bag in piles of different amounts and denominations. Large quantities of plastic bags and sophisticated scales were found. All these facts point to a profitable drug business." *Id.* To hold that the money seized by the authorities was not "derivative contraband" traceable to the sale of drugs by the appellant would be to ignore the realities [1] and to take a myopic view of the case. We refuse to do so and affirm the actions of the court below.

1. Although not dispositive of the case, one cannot ignore evidence that neither the appellant nor his wife held steady jobs. Mrs. Graham had been employed at minimum wage for three unconsecutive years. As for the appellant, he received a disability payment of $400 a month, had not worked for approximately 5 years prior to his arrest and was supporting a family of three solely on his disability check. Yet, the Grahams managed to own several vehicles and some 19 guns.