## Commonwealth of Pennsylvania *v.* Babcock Lumber Company.

Argued November 10, 1970, before President Judge BOWMAN, and Judges KRAMER, WILKINSON, JR., MANDERINO, and MENCER.

*Thomas L. Wenger*, with him *Rhodes, Sinon and Reader*, for appellant.

*Edward T. Baker*, Deputy Attorney General, with him *Fred Speaker*, Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, filed January 11, 1971:

In this tax appeal the Babcock Lumber Company contests a decision of the Board of Finance and Revenue which sustained a resettlement by the Department of Revenue of Babcock's capital stock tax for the calendar year 1966.

All of the facts have been stipulated of record. We adopt them as our findings of fact and shall discuss those facts which, in our judgment, are essential to the disposition of this appeal.

The narrow issue presented is whether a particular business activity of Babcock qualifies for the manufacturing or processing exemption within the meaning of the Act of June 1, 1889, P. L. 420, as amended, 72 P.S. 1871, known as the Capital Stock Tax Act.

Babcock is a domestic corporation which has as one of its corporate purposes the manufacture, purchase and sale of wood, lumber and other forest products and articles and structures made in whole or in part therefrom.

For the calendar year 1966, Babcock's total gross receipts were $6,400,818. Of this amount, $4,624,398 represents receipts from items purchased by Babcock for resale and resold during the year in question. The remainder of gross receipts ($1,776,420) represents those derived from the sale of lumber purchased from others as green lumber and kiln dried by Babcock. Of this remainder sum of gross receipts, $941,503 represents sales of lumber which Babcock simply kiln dried; $393,621 represents sales of kiln dried lumber which was also subjected to a "presurfacing process";[1] and

---

[1] Stipulation of Fact 4(b) describes a presurfacing process to be ". . . a preliminary planing operation by which variations in thickness of the lumber and certain manufacturing defects are removed. Presurfacing gives the lumber sufficient uniformity for

$441,296 represents sales of kiln dried lumber made into finished millwork items by Babcock.

In making resettlement of Babcock's capital stock tax for the year in question, the taxing authorities recognized as qualifying for the manufacturing exemption Babcock's gross receipts from the sale of finished millwork items ($441,296) and related tangible property. Babcock asserts, however, that its total gross receipts from the sale of kiln dried lumber ($1,776,420) and related tangible property also qualify for the manufacturing exemption; or alternately, that its gross receipts from the sale of kiln dried lumber subjected to presurfacing qualifies for the processing exemption ($392,621).

The Capital Stock Tax Act, *supra,* imposes upon a domestic corporation a tax at the rate of five mills upon the actual value of its whole capital stock but further provides that after the year 1957 the tax shall not apply to the capital stock of corporations ". . . organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within the State . . . but every corporation . . . shall pay the State tax . . . upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing, processing, research or development business . . . it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the manufacturing, processing, research or development plant and business."

The act does not define "manufacturing", which omission has generated substantial litigation over the

further precision machining, but does not itself produce a finished surface."

years. From the numerous decisions on this subject there has emerged the so-called "new and different product" rule to be applied to a particular business activity in determination of its taxable or exempt status under the statute. However, in creating an exemption for processing by the amendatory Act of August 23, 1961, P. L. 1100, the Legislature provided that ". . . the term processing shall mean and be limited to the following activities when engaged in as a business enterprise." Of the twelve activities thus defined, only one is arguably relevant. It exempts as a processing activity "the operation of a saw mill or planing mill for the production of lumber or lumber products for sale".

We shall first consider Babcock's initial contention that the kiln drying of lumber is, in itself, manufacturing. As to this particular activity the record discloses that Babcock purchases all of its green lumber from sawmills and does no timbering, logging or rough cutting itself. When purchased, the green lumber is stacked to encourage air drying and later is placed in cross-circulation fan-type dry kilns with forced hot air and humidity controls whereby over a period of time, depending upon the kind of wood and desired result, the moisture content is reduced from a natural content of 50% to 60% to that of 6% to 8%, which is considerably less than can be achieved by air drying.

Apart from the kiln itself—of which Babcock operates three—auxiliary equipment includes boilers, the mentioned control devices and an electronic device to measure moisture content. To operate the kilns, the auxiliary equipment and controls require skilled and experienced personnel. After such operations the commercial utility and value of dried lumber is substantially greater than that of green lumber; it is more stable, less subject to deterioration, lighter in weight and subject to less shrinkage in shape as it ages.

Does this business activity of Babcock's constitute manufacturing as it has been defined by our decisional law? In our opinion it does not.

Historically, in Pennsylvania our courts have applied what is said to be the popular or practical understanding of what constitutes manufacturing where this word appears in taxing statutes otherwise silent as to what meaning the Legislature intended. Thus, in *Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 104, 202 A. 2d 94, 96 (1964), in deciding that the production of popcorn on a substantial scale and its wide distribution and sale from vending machines did not constitute manufacturing, the Supreme Court stated:

"The meaning of 'manufacturing' has been restated by this Court in Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361, 364, 167 A. 2d 257, 258-59 (1961) : ' "Manufacturing" as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 Atl. 148 (1928) ; Pittsburgh v. Electric Welding Co., 394 Pa. 60, 145 A. 2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A. 2d 572 (1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production: Commonwealth v. Weiland, supra; Pittsburgh v. Electric Welding Co., supra.'

On the same day as the decision in Parent Metal Products Co., we also decided Philadelphia School Dis-

trict v. Rosenberg, 402 Pa. 365, 368, 167 A. 2d 259, 260 (1961), in which we emphasized that 'it is the popular or practical understanding of what is "manufacturing" that prevails and is intended.' "

More recently, citing *Berlo,* the Supreme Court reached the same conclusion with respect to the production of tea bags requiring the use of intricate machinery, control devices and specially trained personnel. *Commonwealth v. Tetley Tea Company, Inc.,* 421 Pa. 614, 220 A. 2d 882 (1966).[2]

In the instant case Babcock subjects pre-cut green lumber to a kiln drying process from which emerges the same identifiable lumber but with a reduced moisture content. While its commercial and utility value has been considerably enhanced, only insignificant changes in its shape and size result from the artificial withdrawal of its moisture content. After kiln drying it is neither new nor different but essentially the same product at the end of the process as it was upon entering the process, namely pre-cut unfinished lumber.

In *Commonwealth v. Hardes Lumber Corp.,* 77 Dauphin 359 (1961), the Dauphin County Court concluded that the operation of a modern, complete saw mill did not constitute manufacturing within the meaning of the Capital Stock Tax Act. In that case the operations commenced with timbering, progressed through logging, barking, sawing into lengths and boards and air drying which operation involved modern machinery and equipment and skilled personnel. In its conclusion that Court stated:

"In *none* of the defendant's operations was there actually involved such a change as to cause a *new product to emerge.* When this lumber is sold, it is the

---

[2] *See also: Commonwealth v. American Ice Co.,* 77 Dauphin 35 (1961), aff'd. 406 Pa. 322, 178 A. 2d 768 (1962), in which the production of ice was held not to be manufacturing.

same wood in all respects as when it was cut, except for the drying process. When we compare the defendant's processes with the five processes considered by the Supreme Court in the Armour case, and the activities involved in these cases herein cited, we cannot reach the conclusion that the defendant's activity is manufacturing. It is our considered judgment that the defendant is not entitled to the manufacturer's exemption under the Capital Stock Tax Act, supra." (Emphasis supplied). 77 Dauphin at 365.

While we are not here concerned with a traditional sawmill operation but with the single activity of kiln drying pre-cut lumber, the Court's reasoning is persuasive in this case. For these reasons, Babcock's basic contention that its kiln drying activity is manufacturing must be rejected.

We now turn to Babcock's alternate contention that in presurfacing some of its kiln dried lumber it is engaged in processing within the meaning of the act.

As noted above, the Legislature in 1961 created an exemption for processing but chose to define that word to mean and *be limited to* twelve enumerated activities, one of which is "the operation of a sawmill or planing mill for the production of lumber or lumber products for sale".

It has been said that the processing amendment inserted into the statute in 1961 by the Legislature was at least partially motivated by a legislative desire to overcome prior judicial decisions denying the manufacturing exemption to certain activities. *Commonwealth v. Rudd-Melikian, Inc.,* 86 Dauphin 275 (1966). Whether this is an accurate insight into the collective legislative mind is perhaps of more historical than legal significance. A reading of the amendment, however, clearly demonstrates that the legislative intent was to narrowly limit processing to the enumerated activities and not

leave to judicial interpretation (as it did with respect to manufacturing) the potentially more complex questions as to what constitutes processing. Thus for Babcock to prevail, it must factually demonstrate that in presurfacing kiln dried lumber it is engaged in the operation of a sawmill or planing mill.

Babcock does not seriously contend that its operation is one of operating a sawmill which by common definition is an activity which would include at least the cutting and sawing of raw timber and logs. *Commonwealth v. Hardes Lumber Corp., supra.* It does insist, however, that in presurfacing lumber it is engaged in a planing mill operation.

Apart from the disclosure in the record as to what constitutes presurfacing of lumber and the end result of the activity,[3] and the fact that gross receipts from the sale of such lumber amounted to $393,621 out of total gross receipts of $6,400,818, we are without further information in determination of Babcock's right to the exemption it seeks.

Based upon these facts is this particular activity of Babcock the ". . . operation of a . . . planing mill for the production of lumber or lumber products"?

Keeping in mind the expressed legislative intent that processing is to be *limited* to the enumerated activities and that exemptions contained in tax statutes are to be strictly construed, *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 194 A. 2d 199 (1963), an analysis of the twelve categories set forth in the statute discloses in several instances that a single act performed upon a particular product is accorded exemption whereas in other instances the activity described is a series of acts resulting in an end product in a particular form or state. For example, the single act of rolling metal is said to be processing while the cooking or freezing of

---

[3] *See* footnote 1.

food products is not unless there is also involved its packaging for wholesale distribution.

In the instant case, the activity accorded exemption is that of the operation of a planing mill, not a particular act that a planing mill may perform as one of many and varied operations that produces finished millwork. On the record before us, Babcock's single act of presurfacing lumber cannot, in strict construction of the exemption and in recognition of the expressed legislative intent, be considered as the operation of a planing mill. It may be that its act of presurfacing lumber was performed as part of its activity in producing finished millwork (which activity the taxing authorities accorded exemption as to gross receipts derived therefrom and tangible property employed thereon) but the record does not permit us to speculate as to such a conclusion. It was incumbent upon Babcock to clearly demonstrate its right to exemption. *Commonwealth v. Berlo Vending Co., supra.* It has not done so.

## CONCLUSIONS OF LAW

1. Babcock, a Pennsylvania corporation, is subject to capital stock tax liability under the Act of June 1, 1889, P. L. 420, as amended.

2. In its activity of kiln drying green lumber purchased from others Babcock is not engaged in manufacturing within the meaning of the taxing statute and such activity is not, therefore, exempt for purposes of determining tax liability.

3. In its activity of presurfacing kiln dried lumber, Babcock is not engaged in processing within the meaning of clause, (9), subsection (c) of Section 1 of said act, and such activity, in itself, is not therefore exempt for the purpose of determining tax liability.

4. Resettlement of Babcock's capital stock tax for the calendar year 1966 was lawful and proper.

5. Judgment should be entered in favor of the Commonwealth and against Babcock Lumber Company in the amount of $1,575.25, being the difference between the amount of capital stock tax for the calendar year 1966 heretofore paid by Babcock and the amount of the resettlement of such tax made by the taxing authorities.

Accordingly, we enter the following

### ORDER

Now, this 11th day of January, 1971, the appeal is hereby dismissed and judgment is directed to be entered in favor of the Commonwealth and against Babcock Lumber Company in the amount of $1,575.25 together with interest and costs according to law unless exceptions be filed hereto within thirty (30) days.