**PPL HOLTWOOD, LLC, Appellant,**

v.

**PIKE COUNTY BOARD
OF ASSESSMENT and
Revision of Taxes.**

**PPL Holtwood, LLC, Appellant,**

v.

**Wayne County Board of Assessment
and Revision of Taxes.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.

Decided April 6, 2004.

Malcolm J. Gross, Allentown, for appellant.

Howard L. Kelin, Lancaster, for appellee.

BEFORE: COLINS, President Judge, and COHN, J. (P.), and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

PPL Holtwood, LLC (PPL), successor-in-interest to PPL Electric Utilities Corporation and formerly known as PP&L, Inc. and Pennsylvania Power and Light Company, appeals from the order of the Court of Common Pleas of Pike County (trial court). The trial court ordered PPL to pay to taxing authorities of Pike and Wayne Counties additional penalties and interest based on the amount of PPL's original unpaid tax bills for its Wallenpaupack Hydroelectric Generating Station (Wallenpaupack), instead of on the final, and significantly lower, tax bills on the same parcels. We reverse and remand.

Wallenpaupack lies in both Pike and Wayne Counties, which counties are governed by The Fourth to Eighth Class County Assessment Law (FECCAL)[1] and, to the extent not inconsistent with FEC-CAL, The General County Assessment Law (GCAL).[2] Pike County is an Eighth Class County, and Wayne County is a Seventh Class County. In 1999, the General Assembly amended the Act known as the Public Utility Realty Tax Act (PUR-TA)[3] to subject electric generation realty, such as Wallenpaupack, to ordinary local real property taxation, effective January 1, 2000. The PURTA amendment also changed the tax base for the levy of PUR-TA tax, retroactive to January 1, 1998, from book value (cost less accumulated depreciation) to "current market value," which is determined by applying the Common Level Ratio (CLR) to the county assessment of the realty. Utilities were given the opportunity to appeal their 1998 and 1999 assessments under PURTA and the assessments for the tax years thereafter under FECCAL and GCAL. PPL appealed the 1998, 1999, and 2000 assessments for the Wayne County portion of Wallenpaupack, consisting of two tax parcels, to the Wayne County Board of Assessment and Revision of Taxes (the Wayne Board). PPL also appealed the 2000 assessment of the Pike County portion of Wallenpaupack, consisting of one tax parcel, to the Pike County Board of Assessment and Revision of Taxes (the Pike Board).[4]

The Wayne Board had assessed its two Wallenpaupack tax parcels for the year 2000 at $402,870. At the applicable CLR, this assessment indicated a fair market value of approximately $4,783,000. Following the hearing on PPL's appeal, the Wayne Board increased the collective assessment of the Wayne County parcels to $7,159,850. At the applicable CLR, the Wayne Board's assessment indicated a fair market value of approximately $81,000,000 for the parcels.[5]

The Pike Board had assessed its Wallenpaupack parcel for the year 2000 at $609,502. At the applicable CLR, this as-

---

1. Act of May 21, 1943, P.L. 571, *as amended*, 72 P.S. §§ 5453.101–5453.706.

2. Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1—5020–602.

3. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 8101–A—8111–A.

4. Pursuant to the "automatic appeal" provisions set forth in Section 704(f) of FECCAL, 72 P.S. § 5453.704(f), and Section 518.1(b) of GCAL, 72 P.S. § 5020–518.1(b), the Wayne and Pike County assessments for the years 2001 and 2002 for all parcels were also to be reviewed on appeal.

5. The Wayne Board subsequently increased its assessment to $7,190,310, resulting in a fair market value for the Wayne County parcels, after applying the CLR, of $81,682,000.

sessment indicated a fair market value of approximately $1,859,000. Following the hearing on PPL's appeal, the Pike Board increased the assessment of its parcel to $42,467,800. At the applicable CLR, the Pike Board's assessment indicated a fair market value of approximately $129,000,000 for the parcel.

Thus, together the Wayne and Pike Boards arrived at a fair market value of Wallenpaupack of approximately $210,000,000, approximately 31 times greater than their combined fair market value of $6,642,000 prior to PPL's appeal. In arriving at this calculation, the Boards accepted the valuation analysis and legal argument of the Wallenpaupack Area School District (WASD) that the fair market value of Wallenpaupack was $210,000,000. WASD in part developed its analysis from an inspection of Wallenpaupack. It had also requested data and information from PPL regarding the valuation of its plant. PPL declined to provide any of this information to WASD. Moreover, PPL did not present any valuation analysis during its appeal before the Wayne and Pike Boards.

PPL appealed the decisions of the Wayne Board and the Pike Board to the Courts of Common Pleas of Wayne County and Pike County, respectively. By consent of the parties, the Wayne County appeals were transferred to, and the matters consolidated before, the Pike County Court of Common Pleas.[6] During the pendency of these appeals, WASD and other taxing authorities (collectively, taxing authorities) billed PPL for taxes based on the assessed fair market value of Wallenpaupack of $210,000,000, which taxes amounted to $9,400,092. PPL refused to pay these, or any taxes, thus subjecting itself to the imposition of penalties and interest.

Also during the pendency of the appeals before the trial court, the parties, after each hiring independent third-party appraisers, reached a stipulation agreement that, among other things, fixed the fair market value of Wallenpaupack at $8,500,000.[7] The stipulation agreement also established (1) the assessments on all parcels of Wallenpaupack for the relevant years, (2) the principal amount of tax to be levied and collected on the stipulated assessments, and (3) that PPL would pay penalties and simple interest based on the stipulated taxes for the years 2000–2001. The stipulation agreement also provided that the only issue that remained before the trial court was the issue of what *additional* penalties and interest are due and owing from PPL as a result of its failure to pay taxes for the years 2000 and 2001, if any. Specifically, the issue was whether PPL owed penalties and interest on the taxes billed on the assessed fair market value of Wallenpaupack at the time the tax bills were issued ($210,000,000) or whether it owed penalties and interest based on taxes on the fair market value assessment ultimately determined on appeal ($8,500,-000). In the latter case, PPL may owe nothing more. In the former case, PPL would owe approximately $940,009 in penalties, with a monthly simple interest of $77,551. In the stipulation agreement, PPL agreed to pay penalties in the amount of $37,050.65 based on the stipulated assessments, with a combined monthly simple interest of $3056.68. The stipulation agreement was approved by and made an order of the trial court on July 31, 2002.

---

6. Wayne County's single judge recused himself, and, with the consent of the parties, transferred the Wayne County appeals to Pike County for disposition.

7. PPL's appraiser arrived at a fair market value of $4,200,000; the taxing authorities' appraiser arrived at a fair market value of $21,000,000.

Following a hearing, the trial court determined that PPL was responsible for penalties and interest on taxes levied on the $210,000,000 fair market value for Wallenpaupack. The court noted that both FECCAL and GCAL explicitly provide that an appeal "shall not prevent the collection of taxes based on the assessment complained of, but in the case the same shall be reduced, then the excess shall be returned to the person or persons who shall have paid the same...." Section 704(e) of FECCAL, 72 P.S. § 5433.704(e); Section 518.1 of GCAL, 72 P.S. § 5020–518.1(a). The court further noted that if taxes are not paid, penalties of up to 10% are assessed pursuant to Section 10 of the Local Tax Collection Law (LTCL).[8] To avoid penalties and interest, the court observed, taxes may be paid under protest, and if the taxpayer prevails on appeal, he or she is entitled to a refund plus interest. *See* Section 704(e) of FECCAL, and Section 518.1 of GCAL. Should the taxpayer lose the appeal, however, penalties and interest are not assessed because the taxes had been timely paid. *See* Section 10 of the LTCL.

The trial court determined that the above statutory process of directing that taxes be paid, with any refund being reimbursed following the appeal process, could not be avoided without penalties and interest being assessed against the taxes actually billed but not paid. The court opined that a "dire precedent" would be created if PPL prevailed on its position of paying penalties and interest on the taxes ultimately levied after the appeal process had concluded, one that would cause numerous problems if taxpayers could put off payment of taxes by simply appealing the assessment. Trial Court Opinion, p. 5. The trial court therefore concluded that PPL owed penalties and interest to the taxing authorities based on the face amount of the unpaid tax bills on Wallenpaupack, regardless of the final result of its assessment appeals. PPL's appeal to this Court followed.[9]

PPL raises several arguments in support of its position that the trial court erred by determining that it owed additional penalties and interest based on the face amount of the taxes originally levied. First, because neither FECCAL nor GCAL explicitly address the issue raised by this appeal, PPL argues that the trial court erred by not ascertaining the legislative intent behind these acts as guided by principles of statutory construction. PPL argues that because FECCAL, GCAL, and LTCL are ambiguous as to the issue in dispute, the trial court should have construed all doubts in favor of the taxpayer and against the taxing authorities. Also, PPL argues that the trial court erred by not attempting to ascertain the General Assembly's intent by examining a statute that is concerned with the same or a similar subject, in this case the statute governing assessments in counties of the Second Class, commonly referred to as the Second Class County Assessment Law (SCCAL).[10] SCCAL *does* explicitly address the issue before us and would be applicable had Wallenpaupack been located in the Second Class County of Allegheny. Section 17 of SCCAL provides that penalties and interest assessed against unpaid taxes for prop-

---

8. Act of May 25, 1945, P.L. 1050, *as amended,* 72 P.S § 5511.10.

9. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or made factual findings unsupported by substantial evidence. *Hahn Home v. York County Board of Assessment Appeals,* 778 A.2d 755 (Pa.Cmwlth. 2001).

10. Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

erty in a Second Class County are to be computed on the basis of the assessment as *finally determined.* 72 P.S. § 5452.17. PPL argues that the trial court erred by failing to conclude that the express legislative directive in SCCAL was persuasive authority for interpreting FECCAL and GCAL in a similar fashion for a similar issue.

PPL also argues that by concluding that a taxpayer in the Fourth to Eighth Class County is to be treated differently than one in a Second Class County as to the particular issue in this case, the trial court erroneously invoked the constitutional issue of non-uniformity of taxation. Finally, PPL argues that the trial court erred by construing FECCAL and GCAL in a manner that is absurd and unreasonable, as it relates to the issue in this case. This is demonstrated by the fact that the trial court's order requires PPL to pay penalties and interest on taxes it did not owe and which were more than 25 times higher than the penalties and interest accrued on the amount of tax actually owed.

In response, WASD argues that the clear intent of the legislature in imposing penalties and interest on unpaid tax bills is to deter taxpayers from refusing to pay their tax bills. Because PPL had a statutory duty to pay the taxes billed, and refused to pay these taxes, it exposed itself to penalties and interest due on the face amount of the tax bill. WASD further notes PPL's refusal to cooperate by failing to present the taxing authorities with timely information about its facility, forced the taxing authorities to make assessments based on available information.

WASD also argues that PPL's argument that FECCAL and GCAL should be interpreted in light of the language of SCCAL is erroneous because different tax assessment laws are clearly applicable by statute to the nine different classes of counties created by the General Assembly. Thus, WASD argues that there is a clear intent by the legislature to apply different tax assessment rules to different classes of counties. WASD therefore argues that it would be erroneous to apply a law that applies to a County of the Second Class (Allegheny County) to Pike and Wayne Counties, which are governed by FECCAL. WASD further argues that if PPL were to prevail, the fiscal health of Pennsylvania's schools, counties, and municipalities would be endangered and that taxpayers who pay their taxes on time would be penalized by having to cover the lost revenue caused by taxpayers such as PPL who ignore their statutory duty. In other words, taxing authorities would have to increase taxes to cover the shortfall created by delinquent taxpayers such as PPL.

█ It is well established that the power to tax in Pennsylvania is purely statutory and must be derived from an enactment of the General Assembly. *Independent Oil & Gas Ass'n of Pennsylvania v. Board of Assessment Appeals of Fayette County,* 572 Pa. 240, 814 A.2d 180 (2002). Penalties for failure to timely pay a tax are added to the taxes owed. Section 10 of LTCL. Moreover, statutory penal provisions are strictly construed. Section 1928(b) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1928(b).

Here, the parties concede that neither FECCAL, GCAL, nor LTCL explicitly address the issue of whether penalties and interest for non-payment of taxes under their provisions are to be based on the taxes originally billed or on those calculated on the final assessment, when taxes are levied during the pendency of an assessment appeal. Therefore, as PPL asserts, we must construe these acts in accordance with the Statutory Construction Act. Sec-

tion 1921 of the Statutory Construction Act, 1 Pa.C.S. § 1921, provides:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

Further, Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922, provides:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest against any private interest.

■ In addition to these basic principles of statutory construction, we note that it is equally well-settled that taxing statutes are to be strictly construed against the Commonwealth, and any reasonable doubt as to their construction or application must be resolved in favor of the taxpayer. *BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County*, 565 Pa. 65, 771 A.2d 759 (2001); *City of Philadelphia v. Tax Review Board ex. rel. Ace Dump Truck Service*, 158 Pa.Cmwlth. 402, 631 A.2d 1072 (1993).

■ Although we ultimately agree with PPL that penalties and interest are to be based on taxes levied on the final assessment on appeal under FECCAL and GCAL, not on the tax bills levied on the assessment appealed from, we cannot base our decision on PPL's first argument that any ambiguities in the controlling statutes must be construed in its favor as the taxpayer. That is because the favorable position of the taxpayer may shift from case to case. In this case, the taxpayer's final assessment was lower than the assessment appealed from. In another case, however, the final assessment may actually be higher than the assessment appealed from.[11]

---

11. A tax assessment appeal under FECCAL is heard *de novo* by the trial court. Section 704

There is nothing in any of the relevant statutes that suggests the imposition of a non-uniform system whereby penalties and interest for nonpayment of taxes are computed against whichever assessment during the appeal process happens to be lower, the original assessment or the final one.

PPL is correct, however, in arguing that other principles of statutory construction support its interpretation of FECCAL and GCAL on this issue. We may, of course, derive guidance from another statute that is concerned with the same or a similar subject pursuant to Section 1921(c)(5) of the Statutory Construction Act. Section 17 of SCCAL provides that penalties and interest assessed against unpaid taxes for property in a Second Class County are to be computed on the basis of the assessment as *finally determined*. The reason that a similar explicit directive is not also found in FECCAL or GCAL is not evident from a reading of these statutes.[12] It is rather evident, however, that correct statutory interpretation requires that the legislative intent expressly set forth in SCCAL indicates that the intent of the General Assembly in FECCAL and GCAL is the same and not the opposite as to the narrow issue of how penalties and interest for nonpayment of taxes are to be computed. For one thing, as PPL points out, the result of interpreting FECCAL and GCAL oppositely of Section 17 of SCCAL is to create a situation where some taxpayers are treated one way, and others are treated a different way. While we are mindful of the fact that the General Assembly had

created a scheme where the counties are divided into nine classes, based on population, and created taxing legislation specific to certain classes of counties, or a large group of them, there is nothing evident in this legislative scheme that provides a rational basis for the disparate treatment of taxpayers with respect to the manner by which penalties and interest for nonpayment of taxes are calculated. WASD does not itself set forth a rational reason for this result. Thus, the trial court's conclusion that taxpayers of the Fourth through Eighth Class Counties are to be treated differently than those of the Second Class County, as to the narrow issue before us, raises the specter of unconstitutional unequal treatment since neither the court nor WASD has been able to articulate a rational basis for this disparity.[13]

Further, it is simply *reasonable* to compute penalties and interest on the actual taxes assessed at the conclusion of the appeal process rather than on taxes that are ultimately determined not to be owed or incorrectly computed. Where there is ambiguity in the statute, as there is in FECCAL and GCAL as to the narrow issue before us, we must presume that the legislative intent of the statute is not absurd or unreasonable. Section 1922(1) of the Statutory Construction Act. It is, at the very least, absurd and unreasonable to assess penalties and interest against a taxpayer on taxes that the taxpayer does not owe. Nothing in FECCAL, GCAL, or any other taxing statute we have reviewed in

of FECCAL, 72 P.S. § 5453.704. *See also Green v. Schuylkill County Board of Assessment Appeals,* 565 Pa. 185, 772 A.2d 419 (2001).

**12.** GCAL was enacted before SCCAL, which in turn was enacted before FECCAL.

**13.** The trial court erred in concluding that PPL argued that Section 17 of SCCAL direct-

*ly applied* to the present case, which involves counties of the Seventh and Eighth Class, not a county of the Second Class. PPL's argument, which we find persuasive, is that Section 17 of SCCAL provides *persuasive authority* in interpreting FECCAL and GCAL in accordance with the principles stated in the Statutory Construction Act.

this case provides authority for a taxpayer being subject to statutory penalties for not paying taxes that he or she does not owe.

■ WASD makes a rather passionate argument that the result reached by the trial court is correct because of PPL's refusal to pay any taxes and its refusal to initially cooperate in the beginning stages of the assessment appeal process, and because of the fear that should other taxpayers behave as PPL has done in this case, taxing authorities may face dangerous shortfalls in revenue. Of course, we do not condone the nonpayment of taxes, and clearly a major intent of FECCAL and GCAL is that taxpayers, as defined by these acts, are to pay their taxes billed pursuant to these acts. This does not mean, however, that we are free to interpret a statute in an absurd, unreasonable, and, in this case, rather confiscatory manner because a taxpayer is delinquent on its bills and proved uncooperative during one phase of the appeal process. The remedies for collecting delinquent taxes are not defined by principles of equity, but are set forth within the narrow confines of statutory directive. These remedies not only include the assessment of penalties and interest based on the taxes owed but not paid, but also, as conceded by WASD, the ability to proceed against the taxpayer itself for the collection of delinquent taxes. Thus, the question is not whether PPL should be assessed penalties and interest because of its behavior; rather, the issue is what dollar amount those penalties and interest should equal in accordance with the relevant statutory provisions.

We return to the main principle articulated earlier, that the power to tax, and accordingly to assess penalties and interest against delinquent taxes, is purely stat-

utory and must be derived from an enactment of the General Assembly. Were PPL's actions infinitely more egregious, we could not ignore the statutory scheme, or interpret the taxing statutes in a manner inconsistent with the Statutory Construction Act, to "send a message" to delinquent taxpayers. PPL owes penalties and interest for its delinquent taxes, but only those penalties and interest provided for in the relevant taxing statutes. In this case, PPL owes penalties and interest on delinquent taxes actually owed, as determined by the appeal process, but not paid.

Accordingly, the trial court's order is reversed, and this matter is remanded to the trial court for a calculation of the penalties and interest owed by PPL based on taxes owed by PPL as agreed to by the parties in the stipulation agreement approved by and made an order of the trial court on July 31, 2002.[14]

### ORDER

AND NOW, this 6th day of April, 2004, the order of the Court of Common Pleas of Pike County (trial court) in the above-captioned matter is hereby reversed, and this matter is remanded to the trial court for a final calculation of penalties and interest owed by PPL Holtwood, LLC (PPL), based on the taxes owed by PPL as agreed to by the parties in the stipulation agreement approved by and made an order of the trial court on July 31, 2002.

Jurisdiction relinquished.

---

**14.** It is possible that PPL owes nothing more than that set forth in the stipulation agreement.